```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
RYAN J. PRIEL,

                        Plaintiff,           08-CV-0213

             v.                              **DECISION
                                             and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                        Defendant.
_____
```

## **INTRODUCTION**

Plaintiff Ryan Priel ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) of the Social Security Act ("the Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits. Specifically, Plaintiff alleges the decision of the Commissioner was not based on substantial evidence, was based on errors of law, and is in violation of Title II and Title XVI of the Social Security Act as well as the Commissioner's Regulations Promulgated thereunder.

The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") on the grounds that the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings pursuant to Rule 12(a), on grounds that the Commissioner's decision was erroneous and not supported by substantial evidence in the record. The Court finds that the decision of the Commissioner for

the reasons set forth below, is supported by substantial evidence, and is in accordance with applicable law and therefore the Commissioner's motion for judgment on the pleadings is granted.

## BACKGROUND

On November 13, 2003, Plaintiff applied for DAC and SSI benefits alleging disability from April 30, 1981, the day of his birth. Plaintiff's applications were denied by the Social Security Administration on February 6, 2004. Plaintiff then filed a timely request for a hearing on March 24, 2004. Plaintiff thereafter appeared at an administrative hearing before ALJ Timothy M. McGuan on July 26, 2007. In a decision dated September 15, 2005, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Plaintiff then requested the Appeals Council review the ALJ decision, and on March 23, 2007, the Appeals Council remanded the case to the ALJ. On July 26, 2007, Plaintiff appeared, with counsel, at a second administrative hearing before ALJ Timothy M. McGuan. In a decision dated October 9, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. On January 14, 2008, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final. Following the denial of review by the Appeals Council, Plaintiff timely filed the instant action.

**DISCUSSION**

**I. Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c)

where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. The Commissioner's Decision to Deny Plaintiff Benefits was Supported by Substantial Evidence in the Record.

The ALJ in his decision found that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ adhered to the Social Security Administration's five-step sequential analysis in determining disability benefits. See 20 C.F.R. § 404.1520. Step One: ALJ considers whether claimant is currently engaged in substantial gainful activity. Step Two: If the claimant is not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities. Step Three: If claimant suffers from an impairment that is listed in Appendix 1 of Subpart P of the Social Security Regulations, claimant will be considered disabled without considering other factors. Step Four: If claimant does not have an impairment listed in Appendix 1, the ALJ will determine whether or not the claimant, despite his impairments, retains the residual functional capacity to perform

his past work. Step Five: If claimant is unable to perform his past work, ALJ will determine whether claimant can perform other work in the local or national economy.

Under Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 1981, the alleged onset date of his disability.(Transcript of Administrative Proceedings at page 18)(hereinafter "T."). At Steps Two and Three, the ALJ concluded that Plaintiff's impairments, schizoaffective disorder and an unspecified learning disability were "severe" within the meaning of the Regulations, but not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Social Security Regulations. (T. at 19).

For Steps Four and Five, the ALJ concluded that Plaintiff retained the residual functioning capacity to perform a full range of work at all exertional levels with the following non-exertional limitations: "(1) no reading or writing of any kind, (2) simple rote, repetitive tasks only, (3) no complex or detailed instructions, directions or tasks, and (4) a low stress working environment without production quotas." (T. at 21). At Step Four, the ALJ found that Plaintiff has no past relevant work. (T. at 25). At Step Five, while considering Plaintiff's age, education, work experience, and residual functional capacity to perform a full range of work with some non-exertional

limitations, the ALJ concluded jobs exist in significant numbers in the national economy that Plaintiff can perform. (T. at 25).

**A. <u>The ALJ Properly Addressed the Vocational Expert's Testimony</u>**

An improper hypothetical question cannot serve as substantial evidence under § 405(g). <u>Whitmore v. Bowen</u>, 785 F.2d 262, 263-64 (8th Cir. 1986). In order for Vocational Expert ("VE") testimony to qualify as substantial evidence, the posed hypothetical question must accurately portray the claimant's individual impairments. <u>MCaulife v. Barnhart</u>, 571 F. Supp. 2d 400, 405 (W.D.N.Y. 2008). The ALJ, provided the VE with a hypothetical question that incorporated Plaintiff's vocational profile. A younger individual with a GED and special education classes, Plaintiff's residual functional capacity to perform work at all levels of exertion with the following non-exertional limitations: no reading or writing of any kind; simple, route repetitive tasks only; no complex or detailed instructions, directions, or tasks; and a low stress environment without production quotas. (T. at 21). The ALJ correctly determined that Plaintiff did not need a job coach in his hypothetical question to the VE based on statements from Lynn Beltz, Plaintiff's VESID job trainer/developer. (T. at 24).

The VE testified, based on the hypothetical question that such an individual would be able to work as an industrial cleaner

or a bagger, both of which involve medium exertion, unskilled work, and cleaner/housekeeper which involves light, unskilled work. (T. at 652-54). Plaintiff argues there are discrepancies between the Dictionary of Occupational Titles ("DOT") and the VE, and as a result the ALJ failed to carry out his duty to inquire into and resolve discrepancies between the DOT and VE's testimony (Plaintiff's Brief at 18) because part of the ALJ's duty to fully develop the record includes "[q]uestioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations." (Plaintiff's Brief at 18, citing to Haddock v. Apfel, 196 F. 3d 1084, 1091 (10th Cir. 1999)).

Plaintiff specifically focuses on the language development rating of the jobs the VE stated. That the "DOT definitions for the three jobs described require greater ability to read than [the ALJ's] hypothetical." (Plaintiff's Brief at 19). The positions of cleaner/housekeeper and bagger, have the lowest language development rating of "L1," the position of industrial cleaner has the second lowest rating of "L2." Consequently, Plaintiff argues, the above jobs must require reading and writing and are inconsistent with the Plaintiff's limitation of no reading or writing. (Plaintiff's Brief at 16).

"The DOT lists the *maximum* requirements of occupations as generally performed, not the range of requirements of a

particular job as it is performed in specific settings." (Social Security Ruling ("SSR") 00-4p). (Emphasis added). The Social Security Regulations indicate that a claimant is not disabled simply because he is functionally illiterate. <u>Lawson v. Apfel</u>, 46 F. Supp 2d 941 (W.D. Mo. 1998). It is also illogical to conclude that the DOT's apparent "literacy requirement" trumps the testimony of a VE, especially when that VE was asked a proper hypothetical question. <u>Id.</u> at 947. <u>See</u> also <u>Warf v. Shalala</u>, 844 F. Supp. 285 (W.D.Va. 1994). (where the court rejected the "absurd result" that an illiterate individual is unable to perform any of the jobs in the DOT as the DOT is simply advisory in nature).

Just because the positions the VE listed as available for Plaintiff state maximum literacy requirements, does not mean that such literacy requirements are essential and requisite in every job under the category. The VE answered the ALJ's proper hypothetical and listed positions that would not require reading or writing. As such, the ALJ properly addressed the VE's testimony.

**B. <u>The ALJ Fully Developed the Record and his Decision was Supported by Substantial Evidence</u>.**

The ALJ, unlike a trial judge, must affirmatively develop the record. <u>Pratts v. Chater</u>, 94 F.3d 34, 37 n(2d Cir. 1996). Under 20 C.F.R. §§ 404.1512 and 416.912(d), the ALJ is obligated to develop Plaintiff's complete medical history for at least

-8-

twelve months preceding the month in which Plaintiff filed his application. The Regulations also provide that the ALJ is only required to obtain additional evidence if the ALJ cannot decide whether a claimant is disabled based on the existing evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). As such, the ALJ does not have an obligation to seek additional information on the claimant.

Contrary to what Plaintiff alleges, there are no gaps in the record. The ALJ had numerous clinical findings and functional assessments from medical sources on which to base his functional residual capacity determination. The ALJ considered Plaintiff's testimony, medical records, and opinions of Plaintiff's VESID job coach. In addition, Plaintiff has been represented by counsel at both the District Court and administrative level, and has not shown any additional evidence exists that would change the ALJ's decision. (T. at 629).

Dr. Ryan, the consultative examiner, observed that Plaintiff reported no depressive symptoms and that Plaintiff's medication was helping. (T. at 204-05). Dr. Ryan also reported that Plaintiff's thought processes were coherent, and that although Plaintiff had an impaired ability to make decisions and interact with others, Plaintiff could understand simple instructions, consistently perform simple, rote tasks, and sustain concentration for short periods of time. (T. 206). Further, Dr.

Szymanski found Plaintiff was able to understand, remember, and carry out simple instructions, relate appropriately to co-workers and supervisors, and adapt to routine changes in a low contact setting. (T. at 451). These reports are further buttressed by Lynn Beltz, who constantly praised Plaintiff in his excellent job performance (T. at 345. 347, 350-52), and Dr. Chowdhury, one of Plaintiff's treating psychiatrists, who noted that Plaintiff's prognosis was fair when he remained on his medications. (T. at 177).

The ALJ properly did not afford controlling weight to the opinions of Dr. Young and Ms. Franke in evaluating Plaintiff's residual functioning capacity because their opinions were not consistent with the record nor well supported by medically acceptable evidence. See. 20 C.F. R. §§ 404.1527, 416.924. Dr. Young and Ms. Franke noted that Plaintiff was psychiatrically stable (T. 463, 582), generally clean and groomed (T. 465, 579, 590-91), and alert, oriented, cooperative (T. 460-06, 605). In addition, Plaintiff was rational and had adequate judgement. (T. 459-61). However, Dr. Young and Ms. Franke stated Plaintiff had limitations in his ability to make judgments on simple work-related decisions, and understand and remember short simple instructions. (T. at 456). As such, Dr. Young and Ms. Franke's own mostly normal clinical findings, in addition to the findings

of Dr. Ryan, Dr. Szymanski, and Dr. Chowdhury, do not support Dr. Ryan and Ms. Franke's opinions on Plaintiff's limitations.

In addition, the ALJ gave proper weight to the evidence of Lynn Beltz, whose records contradict Dr. Young and Ms. Franke's opinions on Plaintiff's limitations. (See SSR 06-03p). Ms. Beltz had frequent contact with Plaintiff while Plaintiff worked, had frequent contact with Plaintiff's employers who were consistently satisfied with Plaintiff's work. Plaintiff was productive, worked efficiently and with speed, could retain what he previously learned. (T. at 345. 347, 350-52).

The ALJ also properly considered Plaintiff's testimony and statements contained in the record regarding his limitations. (T. at 23). See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. While the ALJ determined that although Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements were not entirely credible. (T. at 23). Despite Plaintiff's learning disability, Plaintiff was able to obtain his GED, with test modifications (Tr. 23, 48, 55), care for his family's animals, mow the lawn, hunt and fish, and shoot accurately at a firing range. (T. at 464, 467, 584, 588, 645-46, 661-62).

While Plaintiff objects to the ALJ's discussion of Plaintiff's drug and alcohol abuse history (Plaintiff Brief at 20-21), the ALJ did not use Plaintiff's drug abuse to mitigate

the severity of his impairments. The ALJ followed the Appeals Council order (T. at 292) to consider whether drug addiction and alcoholism were contributing factors only if Plaintiff was found disabled. 20 C.F.R. §§ 404.1535, 416.935. The ALJ, based on substantial evidence of a complete record, found Plaintiff was not disabled. As such, he did not consider Plaintiff's history of drug and alcohol abuse separately from Plaintiff's other impairments, but considered Plaintiff's history of drug and alcohol abuse as an additional impairment and merely observed that Plaintiff's condition worsened when he did not comply with his medications and abused drugs.(T. at 15-27, 19, 21, 24, 467).

## **CONCLUSION**

For the reasons set forth above, I grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:  Rochester, New York
        January 15, 2010